IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2021

**STATE OF TENNESSEE v. JEREMY ISAAC MARTIN**

**Appeal from the Criminal Court for Bradley County**
**No. 18-CR-119     Andrew Mark Freiberg, Judge**

_____

**No. E2020-01259-CCA-R3-CD**
_____

A Bradley County jury convicted the Defendant, Jeremy Isaac Martin, of possession with intent to sell or deliver a Schedule II controlled substance, .5 grams. or more of methamphetamine.  The trial court sentenced him as a multiple offender to fourteen years. On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction.  After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS., P.J. and D. KELLY THOMAS, JR., J., joined.

C. Richard Hughes, Jr., Public Defender, Leon Shahan, Assistant Public Defender, Cleveland, Tennessee (at trial); and Donna Miller, Chattanooga, Tennessee (on appeal), for the appellant, Jeremy Isaac Martin.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Stephen Davis Crump, District Attorney General; and Paul O. Moyle, IV, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from drug evidence found in the Defendant's front pocket during a pat down.  A Bradley County grand jury indicted the Defendant for possession with intent to sell or deliver a Schedule II controlled substance, .5 grams. or more of methamphetamine.

**I. Facts**

At the Defendant's trial, the parties presented the following evidence: Detective Emory Bryant testified that, while employed by the Bradley County Sheriff's Department, he had been assigned as a Court security officer at the Justice Center. Sergeant Steve McCollum informed Detective Bryant that the Defendant had a misdemeanor warrant outstanding for his arrest, and Detective Bryant assisted in arresting the Defendant, who had arrived at the Justice Center and, after going through security, was standing in the secured area of the Justice Center. In conducting the arrest, Detective Bryant performed a pat down of the Defendant and discovered a pill bottle containing several small baggies of what the detective suspected could be methamphetamine in the Defendant's front pocket. When questioned, the Defendant denied any knowledge of the pill bottle or its contents, and Detective Bryant observed the Defendant to be nervous and sweating profusely. Detective Bryant testified that the Justice Center is maintained by the County, using inmates for janitorial services. On cross-examination, Detective Bryant also confirmed that he found a glass pipe of the type typically used for smoking narcotics in the Defendant's possession at the time of the arrest.

Cassandra Stone (at that time, Burgess) testified that she retrieved the pill bottle from a department lockbox while employed as an evidence tech for the Bradley County Sheriff's Office. Ms. Stone testified that she logged the evidence in, examined the bottle and recorded on the back of the evidence bag that the bottle contained seven small bags of a substance. She processed that evidence for turnover to the TBI Crime Lab, along with additional evidence consisting of a glass pipe which was to be retained by the Sheriff's Office.

Lori James testified that she was employed as a forensic technician working in the Tennessee Bureau of Investigations ("TBI") Knoxville Crime Lab when she received the bottle evidence from Ms. Stone. Ms. James testified as to the procedures and chain of custody used by the lab, and that all standard policies and procedures were followed in processing this evidence.

Sharon Norman testified that she was employed at the TBI Knoxville Crime Lab as a forensic chemist when she processed evidence in this case. At that time, Ms. Norman had been employed as a forensic scientist with the TBI for nineteen years and had processed approximately 35,000 exhibits, along with court appearances as an expert witness in forensic toxicology in about 70 cases. After examination of her background and qualifications by the Court, Ms. Norman was accepted as an expert in forensic chemistry. Ms. Norman testified that the bottle contained a green Ziploc bag, a second smaller green Ziploc bag, and four small corner bags cut from a larger bag, all tied at the top. Each bag contained a crystalline substance. Ms. Norman first weighed the material in one of the bags and determined the net weight of the substance in that bag to be 0.94 grams. Ms. Norman then tested the substance and determined by infrared spectroscopy that it was

2

methamphetamine. She further testified that the lab's testing procedure is driven by penalty thresholds. In this case, since the sample tested exceeded 0.5 grams. but the net weight of the entire set of bags would not exceed twenty-six grams, lab policy required she test only the single sample for methamphetamine.

On cross examination, Ms. Norman testified that she also examined a second baggie containing what appeared to be a different substance, an orange powder with gray and white specks, which she determined to be a mixture of amphetamine and hydrocodone. On redirect examination, Ms. Norman clarified that the testing of the second sample was performed with a gas chromatograph mass spectrometer, and that visual inspection of the other baggies revealed they contained a crystalline substance visually similar to the sample containing methamphetamine.

Based on this evidence, the jury found the Defendant guilty of possession with intent to sell or deliver a Schedule II controlled substance, .5 grams or more of methamphetamine.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the evidence against the Defendant is sufficient to support a conviction for simple possession but insufficient to support the jury's finding of guilt for possession with intent to sell or deliver. The State counters that it presented sufficient evidence to support his conviction, and we agree.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the

conviction is based upon direct or circumstantial evidence.'"  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence.  *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence.  *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)).  "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact."  *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997).  "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)).  The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)).  This court must afford the State the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence.  *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)).  Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict.  *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant argues that in *State v Belew*, 348 S.W.3d 186 (2005), this court held that Tennessee Code Annotated section 39-17-419 does not allow the jury to find a defendant possessed the requisite intent to sell or deliver controlled substances based solely on the amount of controlled substance in a defendant's possession.  While the Defendant's reading is correct, the *Belew* court also held that Tennessee Code Annotated section 39-17-419 "permits the jury to draw an inference of intent to sell or deliver when the amount of the controlled substance *and other relevant facts surrounding the arrest are considered together*."  *Id.* at 191 (emphasis added).

4

In this case, the State presented evidence that: (1) the Defendant had in his possession a quantity of methamphetamine greater than .5 grams; (2) the controlled substance was apportioned among multiple baggies; (3) the Defendant had secreted this controlled substance in his pocket and risked passing through Justice Center security; and, (4) at the time of his arrest was in an area provided janitorial services by current inmates. Even though the Defendant was also carrying a glass pipe, these facts surrounding his arrest considered together were sufficient to allow a rational trier of fact to infer that the Defendant brought controlled substances into the justice center not for personal consumption, but rather with intent to sell or deliver them. For this reason, the Defendant has not demonstrated the evidence in this case was insufficient to support the jury's guilty verdict. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE